# EXHIBIT Q

APPENDIX 0263

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RELIASTAR LIFE INSURANCE COMPANY | § § § § § | |
| Plaintiff, | § | |
| v. | § § | Case No. 4:17-cv-02818 |
| TRANG VU, P.T., a minor, and D.T., a minor, | § § § § | |
| Defendants. | § | |

## AFFIDAVIT OF TEQUELIA ARMSTRONG

STATE OF TEXAS §
§
COUNTY OF HARRIS §

    BEFORE ME, the undersigned authority, this day, personally appeared Tequelia Armstrong, known to me to be the person whose name is subscribed to this instrument and having been duly sworn on her oath did depose and say as follows:

1. My name is Tequelia Armstrong. I am over the age of 18 years, have never been convicted of a felony, and am competent to make this affidavit. The statements in this affidavit are within my personal knowledge and are true and correct.

2. I have a Bachelor of Science Degree in Administration of Justice from Texas Southern University and was formerly employed by Texas Department of Family and Protective Services ("TDFPS") as a caseworker from 2014 to December 2015. TDFPS assigned me to the Tran family case after TDFPS removed D.T. and P.T. from their home and the court awarded TDFPS temporary managing conservatorship of the children.

3. During conservatorship, my role is to develop service plans for the family.

4. On the morning of Monday, July 20, 2015, I contacted the mother, Tuyet Tran, on her cell phone. She stated that she was expecting my call and was anxious to meet with me as soon as possible. We agreed to meet the following day – July 21, 2015 – at 5:00 pm at Mrs. Tran's place of business at 10800 Bellaire Blvd.

5. That same morning, around 10:30 a.m., I called Mr. Vu to introduce myself and to set up our first meeting. He had many questions and I explained to him that he would be required to complete certain services in the process of getting his children returned and

that I'd be drafting a Family Plan of Service that would lay out all of this. Mr. Vu asked if he could meet with me that same day to get a better understanding of the process. I agreed to have him come to my office at 3:00 pm that same day – July 20, 2015.

6. Mr. Vu arrived at my office at approximately 3:00 p.m. on July 20, 2015, and didn't leave until almost 5:00 p.m. At the beginning of our meeting, Mr. Vu spoke calmly but soon started pacing the floor and becoming agitated. His main objective appeared to be to get his children back so they could continue the extensive academic program he had created for them. As soon as I brought up Mrs. Tran, he began to get hostile and raise his voice to the point of yelling. He wanted to know if I had spoken to his wife yet and, if not, he wanted to know when I would be talking to her. Mr. Vu told me how his wife barely had a 5th grade education and wasn't fit to raise the children alone and how he was the one responsible for every positive thing she had (e.g., he had brought her over from Vietnam and that had given her the salon). He wanted me to tell the judge not to place the children with his wife and that he'd rather his children stay in foster care than be given to his wife. I could tell he was very upset at the possibility of his wife getting custody of the children over him. He repeatedly blamed Mrs. Tran for breaking up their family. I tried to explain to him that this was just an initial meeting; nothing was being decided at this point and ultimately it would be up to the judge. I had to constantly redirect the conversation since we were there to talk about services that TDFPS was asking him to complete. After it became obvious to me that Mr. Vu wasn't going to calm down and the meeting wasn't going to be productive, I ended the conversation and told Mr. Vu that I'd be in contact with him within the next few days. Mr. Vu left our meeting angry and visibly upset.

7. The following afternoon on July 21, 2015, I drove to Mrs. Tran's salon as scheduled and immediately was confronted by yellow crime scene tape. A police officer stopped me and confirmed that Mrs. Tran was dead. Based upon my interaction with Mr. Vu the day before, my immediate thought was that Mr. Vu had killed his wife. I notified my supervisor who then asked me to get in touch with the children's foster parent to let her know as well. When I made contact with her, the first thing the children's foster parent said to me upon hearing my voice was that she hoped I wasn't calling to say that Mr. Vu had killed the children's mother. Within the next day or two, I sat down with the two children and a therapist in my office to explain to P.T. and D.T. what had happened. Both children were upset, and I remember that D.T. asked me whether his father had killed his mother.

8. I accompanied P.T. and D.T. to Mrs. Tran's funerals, one in Chinatown and a second one at a Buddhist Temple in Katy, where they had a chance to talk with their father for the first time since they were removed from their home. Soon thereafter, the children told me they no longer wanted any further visits with their father.

9. Mr. Vu was smiling at his wife's funeral, did not appear to be grieving, and looked relieved.

10. I continued as the caseworker for the Tran children, visiting P.T. and D.T. two times a month, either at their school or at their foster home, until I left the agency at the end of 2015 to pursue another job opportunity.

11. As is my regular practice in my role as a caseworker for TDFPS, I memorialized my observations and notes regarding the case in TDFPS's records. Attached as Exhibit 1 to this affidavit are true and correct copy of excerpts from TDFPS's records regarding the Tran case labeled TRAN 0167 and TRAN 0184. These records were made at or near the time of the events recorded (by or from information transmitted by someone with knowledge), were kept in the course of a regularly conducted activity of TDFPS, and it was the regular practice of TDFPS to make this type of record in the course of its investigation. The entries also reflect my observations and factual findings from my investigation in the TDFPS case regarding D.T. and P.T.

12. Additionally, I sent an email to Detective Wendell Gilbert regarding my July 20, 2015 encounter with Mr. Vu. The document labeled TRAN 1368, which is attached as Exhibit 2 to this affidavit, is a true and correct copy of the substance of the email that I sent to Detective Wendell Gilbert regarding the matter.

FURTHER AFFIANT SAYETH NOT.

*Tequelia Armstrong* (signature)
Tequelia Armstrong

SWORN TO AND SUBSCRIBED before me on the ___14th___ day of ___January___ 2019.

*Stella Musick Jares* (signature)
Notary Public, State of Texas

STELLA MUSICK JARES
3597940
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
NOVEMBER 2, 2021

P a g e | 3

APPENDIX 0266