IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RELIASTAR LIFE INSURANCE COMPANY, § <br> P.T., a minor, and D.T., a minor, § <br> *Plaintiffs*, § <br> § <br> v. § <br> § <br> ITANI MILLENI f/k/a TRANG VU, § <br> *Defendant*. § | CIVIL ACTION NO. 4:17-CV-02818 |

**ORDER**

Before the Court is Defendant Itani Milleni's Motion and Incorporated Brief for Summary Judgment (Doc. No. 31) as well as the Plaintiffs' Response thereto (Doc. No. 37) and Defendant's Reply and Objections to Evidence (Doc. No. 41) and the Plaintiffs' Response to the Defendant's Objections (Doc. No. 46).

**I.    Background**

This is an interpleader lawsuit filed when Reliastar Life Insurance Company ("Reliastar"), the issuer of a life insurance policy on Tuyet Tran ("Tuyet" or "Decedent") deposited the proceeds of the policy into the registry of this Court. Reliastar needed this Court to decide whether Trang Vu (now known as Itani Milleni, hereafter "Vu" or "Defendant"), the Decedent's husband and primary beneficiary, or P.T. and D.T., the Decedent's children and contingent beneficiaries, are entitled to the proceeds.[1] It instituted this suit because there were indications that Vu was suspected of murdering the Decedent—which if true would disqualify him from receiving the insurance policy proceeds under Texas law.[2]

---

[1] Vu changed his name after this incident to Itani Mellini. The Court uses his original name in this order as almost all of the documentary evidence in question uses this name.
[2] Under TEX. INS. CODE ANN. § 1103.151, a beneficiary of a life insurance policy forfeits his/her interest if he/she is a principal or an accomplice in bringing about the insured's death.

Consequently, the basic question involved in this lawsuit, after realignment of the parties, is whether Vu was a principal or an accomplice in bringing about the death of Tuyet. The burden of proof on this issue is on the Decedent's children, the realigned plaintiffs, to prove this issue by a preponderance of the evidence. *Medford v. Medford*, 68 S.W.3d 242 (Tex. App.—Ft. Worth 2002, no pet.); *Reliastar Life Ins. Co. v. Thompson*, No. M-07-140, 2008 WL 4327259, at *2 (S.D. Tex. Sept. 16, 2008); *Thompson v. Mayes*, 707 S.W.2d 951 (Tex. App.—Eastland 1986, writ ref'd n.r.e.). Vu was not prosecuted criminally for Tuyet's death, but a criminal conviction is not a prerequisite. *In re Estate of Stafford*, 244 S.W.3d 368 (Tex. App.—Beaumont 2008, no pet.).

Defendant Vu has now filed a Motion for Summary Judgment contending that Plaintiffs cannot raise an issue of material fact as to his involvement in the Decedent's death.

## II. Summary Judgment Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the nonmovant to show that the Court should not grant the motion. *Celotex Corp.*, 477 U.S. at 321–25. The nonmovant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court

must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255.

### III. Defendant's Objections to Plaintiffs' Evidence

Vu has moved for summary judgment on the basis that there is no competent summary judgment evidence that raises a fact issue as to his involvement in Tuyet's death. Plaintiffs have responded to Defendant's motion, in part, with a large number of exhibits—some of which will be discussed below. Defendant has objected to several of these exhibits. The Court will address each objection before addressing the existence (or non-existence) of a fact issue. Its rulings herein should not be viewed as a precursor for rulings at trial, as they are based solely on what is currently filed.

Defendant first objects to a number of exhibits that detail or recount alleged acts of domestic violence Vu perpetrated upon the Decedent. While this Court need not address each piece of evidence to which Defendant objects in this category, it is sufficient to state that for purposes of this motion prior acts of abuse are appropriate summary judgment evidence as proof of motive, opportunity, and intent and as direct proof of the kind and nature of Defendant and Decedent's relationship to the extent that is relevant. In some places these records also contain Vu's own admissions that he committed acts of violence against the Decedent. Consequently, that testimony/evidence to the extent it is otherwise admissible is admitted for those limited purposes, but not to prove Vu acted on the occasion in question in accordance with this character evidence. Rule 404 Fed. R. Evid.

The objection to Exhibit B-6—the affidavit of Tuyet Tran—is overruled. While generally inadmissible at trial, affidavits are appropriate to consider in summary judgment proceedings. The objection to Exhibit C is granted. The objections to the hearsay statements in Exhibits E, F,

H, H-2, K, and M are granted to the extent they are used to prove the truth of the matters asserted. The objections are denied to the extent they contain admissions of the Defendant. The objections to H-1 are granted. The foundation objections to O-2 and X-1 are granted. The Court grants the objection to Q to the extent it contains hearsay statements other than those that qualify as admissions by Vu. The ruling on the objections to Exhibit Y—the expert witness report of James Binford—is covered by a separate order. They are granted in part and denied in part.

**IV.    Discussion**

While the Defendant is factually correct that the Plaintiffs have no direct evidence (such as an eye witness) linking Vu to the death of Tuyet, direct evidence is not required. In fact, circumstantial evidence can be the sole basis for a judgment that a potential beneficiary killed the insured and consequently is not entitled to life insurance proceeds. *Reliastar Life Ins. Co. v. Thompson*, No. M-07-140, 2008 WL 4327259, at *6 (S.D. Tex. Sept. 16, 2008) ("Though the evidence presented is circumstantial, the only reasonable inference that can be drawn from it is that Norma's death was intentionally brought about by another and Guadalupe was the person who committed that offense."). At trial, Plaintiffs only need to prevail by a preponderance of the evidence and that burden may be satisfied by circumstantial evidence. Obviously at the summary judgment stage they only need to raise an issue of material fact to survive. In this case they do.

The summary judgment evidence, even after this Court's rulings above, establishes that Vu perhaps intended to harm Tuyet based upon his years of physical and verbal abuse. This abuse included instances at Vu's own hand and evidence that he used objects such as furniture and belts. These instances of abuse could be triggered by minor events including improperly cooked foods or the Decedent's failure to follow Vu's instructions. The evidence supports the allegation that he did these acts of abuse both in the privacy of their home and also in public

places, such as Tuyet's salon. These acts also occurred in front of family members and non-family members alike. Much of this evidence comes from Vu himself. He also admitted on camera that one of his mistakes was "taking care of my business [abusing his wife]" in front of witnesses. These incidents led to divorce proceedings, police intervention, and TDFPS taking custody of the minor Plaintiffs.

Eventually Tuyet separated from Vu and sought a restraining order. On the morning of July 20, 2015, Tequelia Armstrong ("Armstrong")—a new caseworker at TDFPS—contacted both Vu and Tuyet to set up interviews. Tuyet agreed to meet with her at her salon the following day, July 21st. Vu met with Armstrong at 3:00 p.m. that same day, July 20th. According to Armstrong, the meeting with Vu started calmly but escalated to the point that Vu left angry and upset.

Vu left that meeting, went home, and then went to Tuyet's salon—allegedly arriving at 6:00 p.m. When he arrived, there were several students and instructors still present.

After the students left, Vu claims an unidentified African American male walked into the salon and then left without saying a word. Vu then went to his car, where he kept a gun and small ax, retrieved his gun, and then returned to help those remaining at the salon close up for the night. Eventually only Vu and Tuyet were left in the salon. Vu claims he stayed about fifteen minutes and then left. He states at the time he left he saw the same African American male along with others lingering in the parking lot. Vu claims he left to go buy Tuyet flowers, but he admits he arrived home much later and without flowers.

That same night Tuyet died of blunt force trauma to the head. She was found the next morning, July 21st, dead in her salon. She had been hit with an object which is consistent with the ax owned by Vu. After her death this ax—which Vu normally kept in his car—was lost. The

time of death was estimated to be 8:41 p.m. Vu was by his own admission the last person known to have seen her alive. (Obviously, if Vu was not involved in Tuyet's death, her murderer would have been the last to see her alive.)

The crime scene revealed that Tuyet's cell phone was broken and trashed. Her credit cards were in plain sight, but were not taken. She had cash sticking out of her pocket and there was no forced entry into the cash register. Her car was found within walking distance of the shop with a window broken and the key in the ignition.

Vu has moved for summary judgment based upon the contention that there is no evidence that he was involved in his wife's murder. The above fact scenario, if proven, could be the basis of a reasonable jury to find by a preponderance of the evidence that Vu was the perpetrator of Tuyet's death. That being the case, the Court finds an issue of material fact exists.

## V.   Conclusion

The Court grants in part and denies in part the objections to the summary judgment evidence proffered by the Plaintiffs (Doc. No. 41). It denies Defendant Itani Milleni's Motion for Summary Judgment (Doc. No. 31).

SIGNED at Houston, Texas this 11th day of March, 2019.

Andrew S. Hanen
United States District Judge